# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

BOBBY L. WOOD,                    )
                                  )
                Plaintiff,        )
                                  )
v.                                )        Case No. CIV-12-1395-M
                                  )
CAROLYN W. COLVIN,[1] Acting      )
Commissioner of the Social        )
Security Administration,          )
                                  )
                Defendant.        )

## REPORT AND RECOMMENDATION

Bobby L. Wood (Plaintiff) brought this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of Defendant Acting Commissioner's (Commissioner) final decision denying Plaintiff's application for disability insurance benefits under the Social Security Act. Chief United States District Judge Vicki Miles-LaGrange referred the matter for proceedings consistent with 28 U.S.C. § 636(b)(1)(B), (C), and it is now before the undersigned Magistrate Judge. Upon careful review of the pleadings, the administrative record (AR), and the parties' briefs, the undersigned recommends the Commissioner's decision be affirmed.

---

[1] Effective February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Carolyn W. Colvin is substituted for Michael J. Astrue as Defendant in this action.

# I. Administrative proceedings.

Plaintiff alleged in his June 2008 application for benefits that he had been unable to work since January 1, 1994, when he was forty-three years old. AR 113-16, 137. He attributed his inability to work to a "weak heart, dizziness, carpol tunnel in hands, arthritis, feet hurt and swell, upper and lower back pain."[2] *Id.* at 141. He also pointed to "pain all over body, stomach pains, cramps after eating, sleepy all the time, legs hurt constantly while lying down, neck always sore, stiff hands and soreness, shortness of breath, bad hearing, ears ringing all the time." *Id.* He stated further that "[r]ain causes my body to ache all the time, left testical hurts all the time [and that he suffers from] hemmoroids, obesity." *Id.* According to Plaintiff, "I am in constant pain, unable to walk, sit or stand for long periods. I have difficulty doing anything." *Id.* The Social Security Administration (SSA) denied Plaintiff's application at the State agency level. *Id.* at 57-60, 62-64.

Plaintiff challenged that determination by requesting a hearing before an administrative law judge (ALJ), *id.* at 65, and in June 2010, Plaintiff, who was sixty-years old at the time, appeared with his counsel at an administrative hearing where both he and a vocational expert testified. *Id.* at 18-53. By written

---

[2] Unless otherwise indicated, quotations in this report are reproduced verbatim.

hearing decision, *id.* at 9-17, the ALJ determined the period of adjudication for the matter was from January 1, 1994, the date Plaintiff alleged his disability began, through June 30, 1996, the date he was last insured for disability benefits (DLI). *Id.* at 9. The ALJ found Plaintiff would have been unable to perform his past heavy work[3] as a cement finisher during this period because of functional limitations resulting primarily from carpal tunnel syndrome, but concluded he could have performed other substantial gainful activity, and, as a result, was not under a disability at any time from his alleged onset date, January 1, 1994, through his DLI, June 30, 1996. *Id.* at 11, 15, 16-17.

The SSA Appeals Council denied Plaintiff's request for review of the ALJ's decision, *id.* at 1-4, and Plaintiff ultimately sought review of the Commissioner's final decision in this Court. Doc. 1.

## II.     Determination of disability.

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner applies a five-step inquiry

---

[3]     By Social Security regulation, "[h]eavy work involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds." 20 C.F.R. § 404.1567(d).

to determine whether a claimant is disabled. *See* 20 C.F.R. § 404.1520(b)-(f); *see also Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (describing five steps). Under this sequential procedure, Plaintiff bears the initial burden of proving he has one or more severe impairments. *See* 20 C.F.R. § 404.1512; *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985). Then, if Plaintiff shows he can no longer engage in prior work activity, the burden of proof shifts to the Commissioner to show Plaintiff retains the capacity to perform a different type of work and that such a specific type of job exists in the national economy. *See Turner*, 754 F.2d at 328; *Channel v. Heckler,* 747 F.2d 577, 579 (10th Cir. 1984).

## III. Analysis.

### A. Standard of review.

This Court reviews the Commissioner's final "decision to determin[e] whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir. 1988).

**B.      Plaintiff must establish that he was disabled on or before June 30, 1996, his DLI.**

"An important requirement in this case is that [Plaintiff] had to show he was disabled on or before his DLI – June 30, [1996]." *Vititoe v. Colvin*, No. 12-1484, 2013 WL 6212043, at *4 (10th Cir. Nov. 29, 2013) (claimant had to establish that on or before his date last insured he was unable to engage in any substantial gainful activity for a continuous twelve-month period); *see Potter v. Sec'y of Health & Human Servs.*, 905 F.2d 1346, 1348-49 (10th Cir. 1990) (holding "the relevant analysis is whether the claimant was actually *disabled* prior to the expiration of [his] insured status"). "As relevant here, disability means 'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" *Vititoe*, 2013 WL 6212043, at *4 (quoting 42 U.S.C. § 423(d)(1)(A)).

**C.      The ALJ's findings.**

The following detailed findings by the ALJ are relevant to an evaluation of Plaintiff's claims of error in this matter:

> The claimant last met the insured status requirements of the Social Security Act on June 30, 1996.

> . . . .

5

Through the date last insured, the claimant had the following severe impairment: carpal tunnel syndrome of the right and left hands (20 CFR 404.1520(c)) [and this] impairment causes significant limitation in the claimant's ability to perform basic work activities.

The claimant alleges back and left shoulder pain, but the evidence of record shows only brief treatment for such conditions. The x-rays of the cervical spine and shoulder were normal. The medical evidence shows his back pain did not really start until after his date last insured. As discussed in Social Security Ruling 96-3p, if an impairment is "not severe," it must be a slight abnormality or combination of slight abnormalities that has no more than a minimal effect on the ability to do basic work activities. Accordingly, the undersigned determines his back and shoulder pain was non-severe.

The undersigned has evaluated the claimant's obesity in assessing his residual functional capacity, according to Social Security Ruling 02-1p. The medical record indicates the claimant weighed 184 and was 5 feet, 3 inches tall (BMI 32.6) near his alleged onset date (Exhibit IF). Body Mass Index (BMI) is a measure of an individual's obesity. Indexes of 30 and above are considered to be in the obese range. The effects of the claimant's obesity have been considered when determining a residual functional capacity for the claimant. The medical evidence shows substantial weight gain after his date last insured. He had gained to 316 pounds by December 2009 (Exhibit 9F).

. . . .

   . . . After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform a limited range of light work as defined in 20 CFR 404.1567(b). He could occasionally lift and/or carry 20 pounds and frequently lift and/or carry 10 pounds. He could sit (with normal breaks) for about 6 hours of an 8-hour workday and walk and/or stand (with normal breaks) for at least 6 hours during an 8-hour workday. He needed to use splints at

work on the right and left wrists, causing limited wrist motion of the right and left wrists. He was restricted from the use of vibrating handheld tools. He was limited to occasional use of the hands and fingers.

In making this finding, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence . . . . The undersigned has also considered opinion evidence . . . .

. . . .

The claimant alleges disability due to weak heart, dizziness, carpal tunnel in the hands, arthritis, feet hurt and swell, upper and lower back pain, pain all over his body, stomach pains, cramps after eating, sleepy all the time, legs hurt constantly while lying down, neck always sore, stiff hand and soreness, shortness of breath, bad hearing and ears ringing all the time, rain causes his body to ache all the time, left testicle hurts all the time, hemorrhoids and obesity. He reported he is in constant pain; unable to walk, sit or stand for long periods; and had difficulty doing anything.

He testified at the hearing that he has used oxygen for the last three years and has been on oxygen around-the-clock for the last year. He testified he is no longer smoking. He testified in 1994 he was unable to work due to carpal tunnel syndrome and back and shoulder pain. He testified he took antidepressants for six or seven months and quit because they were not helpful. He testified he had problems with his hands while working. The doctor put his hands in splints. He testified he had therapy for about a week. He tried to return to work at Walmart for four or five days, but he quit because of pain in his hands and back. He was dropping things, and had trouble with zippers and buttons and holding a pen. He was unable to bend down and touch his toes due to back pain. He testified he could lift a gallon of milk. He testified he had trouble sleeping every night because of pain in his shoulder and back. He testified his hands would go numb with prolonged driving. He testified he quit working because he could not get his hands to perform anymore. He testified

he gained weight while using depression medications. He testified he had stomach problems daily. He testified that after he stopped working once in a while he could cook light meals. He would stay at home for months at a time. He did no socializing and did not attend church. He testified his back pain comes and goes and bothers him when he walks. He testified that the medical evidence after his date last insured does not show regular treatment for carpal tunnel syndrome, because he quit complaining about it since he did not have the money to have anything done to them.

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

The majority of the medical evidence of record is past the claimant's date last insured of June 30, 1996. The only evidence of record prior to the date last insured is the medical evidence from Mary Mahoney Memorial Health Center and an evaluation from Dr. Houshang Seradge. Carpal tunnel syndrome is mentioned about three times by the general practitioner, Dr. P. Klaassen. The earlier records dated March 20, 1991 indicate the claimant complained of left shoulder pain and left arm numbness. Physical examination revealed no tenderness of the left acromioclavicular joint area or along the bicipital groove. He had full range of active motion at the shoulder. He did have some pain in the upper lateral deltoid area to active abduction against resistance. There was no pain with active flexion against resistance of the biceps or triceps. Distal neurocircu-latory function appeared to be normal. The x-rays of the cervical spine, left shoulder and left humerus were normal. He was assessed with left shoulder pain with radiculopathy, unknown etiology. He was given a steroid injection and prescribed medication. At the follow-up examination on April 1, 1991, he stated he had noticed a dramatic improvement in the left arm pain and numbness. His examination was unremarkable and his left arm radiculopathy was resolving (Exhibit IF).

On January 7, 1994, the claimant was reportedly under a lot of stress. He had been unable to work for about a year because of carpal tunnel syndrome. His mother-in-law, who recently had a stroke, was living in the home with them. The claimant was smoking and wanted to stop. He was gaining weight. He currently weighed 184 pounds with a height of 5 feet, 3 inches (BMI 32.6). The progress notes indicate no objective clinical findings of carpal tunnel syndrome. He was prescribed Zoloft, was instructed to begin to exercise daily, and was given some Prostep patches and smoking cessation instructions. He stopped smoking for about a month, then resumed smoking. At the visit on June 1, 1994, the claimant was reportedly doing fairly well. He was smoking about one pack of cigarettes per day. He was working hard to lose weight. His hands bothered him a lot and his neck was stiff. He was assessed with carpal tunnel syndrome, smoking and obesity. On August 25, 1994, the claimant complained of abdominal pain on three occasions that resolved spontaneously. However, the last week, it did not seem to resolve, so he went to the emergency room. They checked him over, but could not really come up with any specific diagnosis. He was given Phenergan for nausea and Lortab for pain. He had not taken the Lortab. On November 10, 1994, the progress notes indicate the claimant was about the same as he had been. He was having less abdominal pain. Now and then, he worked an odd job or two. He tried to exercise daily. He continued to smoke about a pack of cigarettes daily. He was encouraged in smoking cessation and weight loss. On May 24, 1996, the claimant was seen for a lesion on the left side of his face that was not healing. He also had complaints of heartburn and hemorrhoids. He was prescribed Cimetidine. Two days later, he was doing better. He stated he had no heartburn, but he still felt like there was a lot of acid (Exhibit IF).

He was next seen on May 22, 1997, nearly one year after his date last insured, the claimant was seen for complaints of arthritic symptoms, back pain and cough. He complained of numbness in his hands, feet and lower back; and pain and numbness in his hands and feet for two to three years. The lower back had been more recent. He stated that he was tested for carpal tunnel syndrome there years ago, but could not afford to have the surgery. Physical examination revealed the claimant was tender to active hand

movement and resistive hand movement. He was assessed with arthritic symptoms with BPH (Exhibit 5F).

The claimant has described daily activities, which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations. He reported in the Function Report dated July 18, 2008, that his daily activities are making coffee, watching the news and weather, sweeping the floor, loading the dishwasher, washing clothes, cooking breakfast for his spouse, might cut the grass slowly, taking naps, and sitting outside for a while. He usually prepares simple meals, but sometimes he cooks a full meal. He has difficulty doing his personal care that requires bending. He drives and goes shopping once or twice a month. He mostly stays home (Exhibit 5E). The Administrative Law Judge notes that these were the claimant's reported functional activities of daily living in July 2008, several years after his date last insured and after he alleged additional severe impairments.

As for the opinion evidence, Dr. Houshang Seradge, a Board certified orthopedic surgeon with added qualification of surgery of the hand, completed a Recovery and Work Status Report for the claimant on March 29, 1993. He reported the claimant's diagnosis is carpal tunnel syndrome on the right and left, trigger right thumb and ganglion cyst on the right wrist. He was to continue work with restriction of wrist motions; vibrating, pneumatic hand held tools; and repetitive hand and finger use of the right and left hands. He gave no restrictions in sitting, walking, bending, squatting, climbing, kneeling, twisting and standing. Concerning his medical status, Dr. Seradge reported the claimant needed to use splints at work on the right and left wrist/hand. He did not check "further medical care needed" or "surgical care needed" (Exhibit 5F). The Administrative Law Judge affords great weight to the opinion of the treating source that is well supported by medically acceptable clinical and laboratory findings, and is consistent with the record when viewed in its entirety.

Pursuant to SSR 96-6p, the Administrative Law Judge has also considered the opinions of the State Agency medical consultants who evaluated the evidence of record at the initial and

reconsideration levels of the administrative review process and assessed that the claimant's impairments were non-severe (Exhibits 2A, 3A and 4F). However, the Administrative Law Judge makes a different interpretation of the medical evidence and finds that thed claimant's impairment was severe, but it does not prevent him from performing light work with some limitations.

. . . .

AR 11-15.

### D.    Plaintiff's claims of error.

Plaintiff brings four claims of error:  the ALJ failed to (1)(a) document his findings regarding Plaintiff's alleged medically determinable mental impairment; (b) demonstrate substantial support for those findings; (c) apply the established, special technique in evaluating that alleged impairment; (2) consider and account for all of Plaintiff's impairments and limitations, including mental limitations, in assessing Plaintiff's residual functional capacity (RFC)[4] and in questioning the vocational expert; (3) properly evaluate Plaintiff's obesity; and also that (4) the ALJ's credibility findings are not supported by substantial evidence.  Doc. 15, at 2.

### 1.    Plaintiff's alleged depression impairment.

Plaintiff faults the ALJ's handling of his claim that he was suffering from what he alleges was a medically determinable impairment of depression on or

---

[4]    Residual functional capacity "is the most [a claimant] can still do despite [a claimant's] limitations."  20 C.F.R. § 404.1545(a)(1).

before June 30, 1996, his DLI. *Id.* at 2-4. In his decision, the ALJ did not, as Plaintiff correctly maintains, state whether Plaintiff's alleged "depression was severe, non-severe, or not medically determinable." *Id.* at 3. Neither did the ALJ, as Plaintiff again charges, apply the regulatory special technique to evaluate Plaintiff's alleged mental impairment. *See* 20 C.F.R § 404.1520a; Doc. 15, at 3.

Any requirement that the ALJ do so, however, is not triggered unless Plaintiff establishes that he suffered from a medically determinable mental impairment. Under Social Security regulations, an "impairment must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508. "A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, *not only by your statements . . . ." Id.* (emphasis added). In addition, an impairment "must have lasted or must be expected to last for a continuous period of at least 12 months." *Id.* § 404.1509.

As the ALJ discussed in his explication of the limited medical evidence from the period of adjudication, in January 1994, the month when Plaintiff alleged his disability began, he sought treatment at the Mary Mahoney Memorial Health Center. AR 14, 228. He told a physician, Dr. Klaassen, that

he had been unable to work for about a year because of carpal tunnel syndrome and that he had been unable to do anything about the condition because his employer did not have workers' compensation coverage. *Id.* at 228. Plaintiff reported that he was discouraged and under a lot of stress both because of those issues and because his mother-in-law, a recent stroke victim, was living in his home. *Id.* Plaintiff complained that he was smoking and wanted to quit and that he was gaining weight. *Id.* Dr. Klaassen prescribed Zoloft and daily exercise and gave Plaintiff some patches and smoking-cessation instructions. *Id.*

Plaintiff saw Dr. Klaassen again in March, April, and June of 1994, but the doctor made no mention of stress in his treatment notes. *Id.* at 227, 226. Dr. Klaassen documented Plaintiff's report of stress in August 1994, noting, "He isn't working, so he is upset by that." *Id.* at 225. The final reference to stress was in November 1994, when Dr. Klaassen observed that Plaintiff "seems more settled" and "[n]ow and then he works an odd job or two." *Id.* at 224. There is no indication from the record that Plaintiff was seen at the clinic at any point in 1995 and, when he did return for treatment in May 1996, stress was not mentioned. *Id.* at 222-23. When "next seen on May 22, 1997, nearly one year after his date last insured," *id.* at 14, Plaintiff's complaints were physical in nature. *Id.* at 221.

Plaintiff did not refer to depression – or to any other mental impairment – in his detailed recitation of the conditions which he believes prevented him from working. *Id*. at 141. During testimony at his administrative hearing, he maintained that at the time he had to quit working because he "couldn't get [his] hand to do any more," he was feeling depressed because "that's my living." *Id*. at 35.

In sum, prior to his DLI, Plaintiff's reports of stress – at not working and not receiving workers' compensation, as well as from a family situation – were documented for only a non-continuous eleven-month period in 1994, and the term "depression" does not even appear in the relevant record. In fact, the same physician who used the specific term "stress" during the period of adjudication, *Id*. at 224, 225, 228, then used the specific term "depression" after that period had long-expired. *Id*. at 219. Thus, there is no semantics issue here. And, contrary to Plaintiff's purported statement of fact, there is absolutely *no* indication in the record that Plaintiff's physician "prescribed Doxepin for *depression* on August 25, 1994." Doc. 15, at 2 (emphasis added).

There simply is no "documented depression" as Plaintiff claims during the period of adjudication. *Id*. at 2-3. Assuming, however, for argument's sake that Plaintiff *had* established that he suffered from a medically determinable mental impairment on or before his DLI, any error by the ALJ in analyzing such an

impairment would be harmless.

Plaintiff's argument is that the ALJ erred at step two by failing to employ the "special technique" prescribed by 20 C.F.R. § 1520a(a), *id.* at 3-4, and that "[t]his failure at step two of the sequential evaluation process caused the ALJ to erroneously assess [his] residual functional capacity ("*RFC*"). The RFC contains no mental limitations at all." *Id.* at 4. Plaintiff "argues a reasonable ALJ, incorporating the proper legal standards . . . could have rendered a different decision in this case. *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004) (error is harmful unless no reasonable adjudicator applying the correct standards could have ruled any other way)." *Id.*

Plaintiff does not, however, state what "mental limitations that affect what [he could] do in a work setting" were established by the evidence of record for the period before his DLI. 20 C.F.R. § 404.1545(a). And, based on the undersigned's review, the evidence cannot support a finding that Plaintiff's functional ability to perform work activities during the period of adjudication was impacted by a mental limitation which was erroneously omitted from the RFC assessment.[5] He generally alludes to problems with sleep, the inability to regularly perform household chores, and "stay[ing] home most of the time

---

[5]    Plaintiff's claim of error does not reach the issue of whether any medically determinable mental impairment was *disabling.*

because of his depression." Doc. 15, at 3. In March 1994, Plaintiff told Dr. Klaassen that his "appetite has gone crazy" and that "[h]e even wakes up at night and has to eat something to go back to sleep." AR 227. Dr. Klaassen made no mention of stress in his treatment note, however. *Id.* Plaintiff voiced only one possible stress-related complaint in August 1994 about his inability to sleep. *Id.* at 225. There are no further indications of sleep difficulties or resulting limitations from sleep difficulties during the relevant period. *Id.* at 222-24.

As to the performance of household chores, Plaintiff blames his hands, not a mental condition. *Id.* at 36. And, apart from the fact that Plaintiff's medical record prior to his DLI does not contain the word "depression," Plaintiff's testimony – that there might have been days after he "stopped working" when he stayed at home because of depression – implicates the previous sixteen years and not just the pertinent time period. *Id.* At most, Plaintiff has shown that he was under stress for a non-continuous eleven-month period in 1994. And, according to the record, Plaintiff's stress was caused by his inability to work – it did not demonstrably restrict his ability to perform work activities.

### 2. The ALJ considered and accounted for all of Plaintiff's impairments.

In his next claim of error, Plaintiff maintains "the decisional RFC for a

limited range of light work does not adequately account for his obesity, argued *infra*,[6] or for his non-severe back and shoulder pain." Doc. 15, at 5. According to Plaintiff, the ALJ should have imposed a reaching limitation because he found Plaintiff's shoulder pain was a non-severe impairment and because Plaintiff testified it hurt a lot and he experienced numbness in the mornings. *Id.* Nonetheless, the ALJ accounted for Plaintiff's back and shoulder pain by restricting him to light work, which involves significantly reduced lifting and carrying. AR 12; *see* 20 C.F.R. § 404.1567(b), (d). The evidence does not support a reaching limitation where Plaintiff was found to have a full range of motion and a "dramatic improvement"of his numbness issues, and where a physician did not impose such a limitation in reporting on Plaintiff's work status. *Id.* at 229, 296. And, while Plaintiff testified that the heaviest thing he lifted after he stopped working was a gallon of milk, the record does not support a lifting restriction to sedentary work during the insured period. Doc. 15, at 5; AR 222-28, 296; *Jimison ex rel. Sims v. Colvin*, 513 F. App'x 789, 792 (10th Cir. 2013) (requiring "record support" for a claimed lifting restriction).

Plaintiff again argues that the RFC was deficient because it contained no mental limitations but, again, he does not tell the court how he was functionally

---

[6]     This report addresses this contention as did Plaintiff as his third claim of error; *infra* § III.D.3.

limited by his alleged mental impairment. Doc. 15, at 5. There is no indication in the record during the insured period that Plaintiff suffered limitations in his ability to concentrate, understand, remember, or focus as he now claims. *Id.* Likewise, when Plaintiff complained about gastroesophageal reflux disease (GERD) approximately a month before his DLI, he received medication. AR 223. He was "doing better" on follow-up with no heartburn but "feel[ing] like there is a lot of acid." *Id.* at 222. He did not return to the clinic for a year but, when he did so, he did not complain of GERD or of any limitation therefrom. *Id.* at 221. Plaintiff's report of ringing of the ears was a one-time only complaint, *id.* at 223, and the undersigned has been unable to locate any reports of medication side effects during the insured period, contrary to Plaintiff's contention.[7] *See* Doc. 15, at 5.

Plaintiff has not established that the ALJ failed to properly account for his functional limitations in assessing the RFC in this case. Thus, the ALJ's hypothetical question to the vocational expert mirroring that RFC was similarly free from error. *See Jimison*, 513 F. App'x at 793-94 (concluding there was no error in a hypothetical question where the claimant fails to point to functional limitations that the ALJ improperly omitted).

---

[7]     In April 1991, prior to the alleged onset of disability, Plaintiff reported that Orudis – a drug not prescribed thereafter – "caused him to have some diarrhea." AR 229.

### 3.    The ALJ properly considered Plaintiff's obesity.

According to Plaintiff, "[t]he record reflects . . . [his] lowest weight between his [onset of disability] and his DLI was 76.2 kilograms on one occasion, which is a BMI of approximately 29.8 (T 225)."  Doc. 15, at 6.  He maintains that "[i]f this number is rounded up, it equates to a BMI of 30, which the ALJ admits is considered to be in the obese range (T 12).  Thus, [he] was obese during the entire period the ALJ considers relevant, not just on one occasion as the ALJ implies."  *Id.*  The undersigned, however, does not read the ALJ's decision as an attempt to diminish Plaintiff's obesity or its potential impact on his functional abilities.  Instead, the ALJ squarely determined that Plaintiff was obese,[8] and affirmatively stated that he had considered the effects of that obesity in determining Plaintiff's RFC.  AR 12.

Plaintiff, however, maintains "the ALJ's light RFC, with no mental limitations, cannot properly account for his obesity."  Doc. 15, at 7.  He theorizes that because the amount of weight lifted is the only difference between the exertional levels of the heavy work he was performing before his onset date, AR 44, and the light work assessed in the RFC, "[i]f the ALJ had considered the

---

[8]    According to the record, Plaintiff weighed 78.5 kg. – and, thus, was obese – while he was working in 1991.  AR 230.  His doctor described him as "very stocky [and] short . . . ."  *Id.*

effects of obesity, he would have assigned a sedentary work level, because it requires standing and walking for only two hours of an eight-hour workday." Doc. 15, at 7. He submits "[t]here is a profound effect of obesity on weight-bearing joints" and claims this "affect[s] his ability to walk, stand, and sit." Doc. 17, at 3.

There is, however, no indication in Plaintiff's treatment records during the adjudicated period that his obesity – or any other condition – limited his ability to stand, walk, or sit, or that he complained to his doctor about any difficulties Plaintiff was having with these particular functions. *See Jimison*, 513 F. App'x at 798 (finding no error in failing to include a claimant's proven obesity in the RFC where "there is no record indication of any functional limitations from [the] obesity or of any impairments possibly caused or exacerbated by [the] obesity that are inconsistent with the RFC . . . .").

Plaintiff has not demonstrated that the ALJ failed to include any established functional restrictions resulting from Plaintiff's obesity in determining his RFC.

### 4. The ALJ's assessment of Plaintiff's credibility was not erroneous.

Plaintiff claims the ALJ's unfavorable assessment of his credibility is not supported by substantial evidence. Doc. 15, at 8. An ALJ's credibility findings

reflect his consideration of Plaintiff's allegations of disabling symptoms in order to "decide whether he believe[d them]." *Thompson v. Sullivan,* 987 F.2d 1482, 1489 (10th Cir. 1993) (quotation omitted). In making this determination, an ALJ should consider factors such as the following:

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

*Hargis v. Sullivan,* 945 F.2d 1482, 1489 (10th Cir. 1991) (quotation omitted).

Here, the ALJ carefully detailed the complaints Plaintiff raised in his disability filings and in his testimony at the administrative hearing. AR 13. He then contrasted those subjective complaints by isolating the medical evidence on or before Plaintiff's DLI, demonstrating the inconsistency between Plaintiff's statements as to his conditions and limitations before his DLI with the objective medical evidence from this time period. *Id.* at 13-14; *see Hargis*, 945 F.2d at 1489. For example, the ALJ noted Plaintiff's complaints about difficulties with his back and shoulder but then pointed to the medical evidence reflecting that these difficulties had largely resolved by 1991. AR 13-14. Likewise, he repeated Plaintiff's claims of multiple hand limitations but specifically referenced the lack of objective clinical findings of carpal tunnel syndrome from onset in 1994 to the

DLI in 1996. *Id.* He documented the sporadic references in the objective evidence to heartburn and abdominal pain but noted that Plaintiff testified he had daily stomach problems. *Id.* The ALJ also focused on Plaintiff's report of his daily activities in 2008 when he applied for disability benefits, including – despite his claim of disabling hand limitations – loading the dishwasher, sweeping the floor, and preparing simple meals. *Id.* at 14-15. He observed "that these were the claimant's reported functional activities of daily living in July 2008, several years after his date last insured and after [t]he alleged additional severe impairments." *Id.* at 15.

The ALJ's conclusion – that Plaintiff's subjective complaints are not entirely credible – is both well supported by substantial evidence and grounded in specific findings. An ALJ's "[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater,* 68 F.3d 387, 391 (10th Cir. 1995) (quotation omitted). The ALJ properly and sufficiently explained the required link between the evidence of record and his finding that Plaintiff's allegations were not entirely credible. And, contrary to Plaintiff's claim, Doc. 15, at 9, as long as the ALJ provides the specific evidence he has relied on in assessing a claimant's credibility, "a formalistic factor-by-factor recitation of the evidence" is not required in the Tenth Circuit. *Qualls v. Apfel,* 206 F.3d 1368, 1372 (10th Cir.

2000).

Plaintiff also claims the ALJ failed to address "uncontroverted reports" that support his allegations that he has been disabled since 1993. Doc. 15, at 9. He does not, however, direct the court to any such reports. Next, Plaintiff mistakenly argues that "[t]he ALJ also failed to note that [he] attempted to return to work . . . which enhances [his] credibility." *Id.*; *see* AR 13. Plaintiff further challenges the ALJ's credibility assessment because he failed to explicitly consider the observations of a SSA representative who recorded various observations after a face-to-face interview with Plaintiff in 2008. Doc. 15, at 9. The interviewer observed that Plaintiff had difficulty hearing, sitting, standing, walking, using his hands, and writing. AR 138. Nonetheless, while Plaintiff's report of his functional activities in 2008 was relevant to the believability of his complaint that he has suffered from *disabling* limitations since 1994, nothing about the fact that he exhibited various functional difficulties in 2008 establishes the credibility of his claim that he was disabled by these limitations prior to his DLI.

Plaintiff has failed to establish that the ALJ committed reversible error in connection with his assessment of Plaintiff's credibility.

## IV. Recommendation and notice of right to object.

For the reasons stated, the undersigned Magistrate Judge recommends

the Commissioner's decision be affirmed.

The parties are advised of their right to object to this Report and Recommendation by February 13, 2014, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. The parties are further advised that failure to make timely objection to this Report and Recommendation waives their right to appellate review of both factual and legal issues contained herein. *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the Magistrate Judge in this matter.

ENTERED this 24th day of January, 2014.

SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE